**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **CSX TRANSPORTATION, INC.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | **Case No. 16 C 9833** |
| ) | |
| **FIVE STAR ENTERPRISE OF ILLINOIS, INC.** ) | |
| **and ROBERT OLESIAK,** ) | |
| ) | |
| **Defendants.** ) | |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ ) | |
| ) | |
| **FIVE STAR ENTERPRISE OF ILLINOIS, INC.,** ) | |
| ) | |
| **Counter-Plaintiff,** ) | |
| ) | |
| **and MT LOGISTICS INC.,** ) | |
| ) | |
| **Plaintiff-Intervenor** ) | |
| ) | |
| **vs.** ) | |
| ) | |
| **CSX TRANSPORTATION, INC.** ) | |
| **Counter-Defendant.** ) | |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

      CSX Transportation, Inc., a rail carrier, has sued Robert Olesiak and Five Star

Enterprise of Illinois, Inc., a shipping company Olesiak owns.  In count 1 of its amended

complaint, CSX alleges that the defendants failed to pay $183,107 in outstanding

interstate rail freight charges.  In count 2, CSX alleges Olesiak fraudulently induced

CSX to enter into a credit agreement with an insolvent company, MT Logistics Inc., by

misrepresenting that Five Star was the credit applicant.  In count 3, CSX contends

Olesiak continued to defraud CSX into extending additional credit after the agreement was formed by withholding the true identity of the company benefiting from the credit agreement. CSX has moved for summary judgment on count 1, and the defendants have moved for summary judgment on counts 2 and 3. The defendants have also brought a six-count counterclaim alleging conversion, tortious interference, breach of contract, and replevin. CSX has filed a cross-motion for summary judgment on each of these claims.

## Background

The following facts are undisputed except where otherwise noted. Robert Olesiak is the sole owner of Five Star, an Illinois corporation in the business of shipping freight. In early 2016, Olesiak sought to establish a new shipping line from Illinois, where Five Star is headquartered, to the East Coast. In pursuit of that goal, he entered into talks to purchase another company, MT Logistics Inc., which he intended to merge with Five Star.

On March 4, Olesiak signed a credit agreement with CSX, a major rail carrier, to transport freight. Olesiak represented to CSX that he was entering into the agreement on behalf of Five Star. The agreement allowed Five Star to ship freight via CSX without prepaying the costs of the shipment and provided for $50,000 of "expected per week" credit to be applied toward shipping charges. But the freight that was being transported using CSX's services was actually entrusted to MT Logistics, not Five Star. CSX alleges that Olesiak intentionally misrepresented which of his companies was applying for credit knowing that MT Logistics—which he was still in the process of purchasing at the time the credit agreement was finalized—was not creditworthy enough to get the

same deferred payment arrangement as Five Star. In other words, CSX contends that Olesiak induced it to extend a line of credit to an unproven company through misrepresentation where it would otherwise have required MT Logistics to pay its shipping charges upfront. As part of this scheme, CSX contends, Olesiak gave CSX the bank information of MT Logistics (and, before that, of another insolvent company Olesiak owned) but told CSX the information belonged to Five Star.

The defendants deny many of these allegations. They contend that Olesiak could not have lied with the intention to obtain otherwise unavailable credit by using Five Star's name because he did not finalize the purchase of MT Logistics until March 15, eleven days after the credit agreement was finalized. That is, they allege that Olesiak did not yet own MT Logistics on March 4 and therefore could not have known whether it was creditworthy.

Between April and July 2016, CSX shipped goods at Olesiak's request. It reports that it believed it was shipping goods on behalf of Five Star and not MT Logistics because the contract named Five Star and Olesiak used Five Star's login credentials to coordinate shipping through CSX's online portal. The defendants respond that CSX should have been on notice that it was shipping MT Logistics' freight because the trailers CSX transported were labeled with the MT Logistics name. CSX counters that photographs of the trailers—five of which remain in CSX's custody, as discussed below—contradict the defendants' allegation.

CSX also alleges that throughout this time, as part of Olesiak's efforts to build MT Logistics' business, he charged customers artificially low rates to undercut competitors. As a result, CSX contends, Olesiak knowingly failed to collect enough money to cover

the shipping charges owed to the railroad. That is, CSX alleges Olesiak was taking out credit he never intended to repay. The defendants deny that Olesiak planned to short CSX on fees and suggest that they were making payments toward their debt under the credit agreement until the events that prompted this case.

During the four months when it was moving freight for the defendants, CSX sought payment for its services with varying degrees of success. Although it successfully withdrew a handful of payments from the bank accounts provided by Olesiak, several more withdrawals were denied for insufficient funds. CSX initially demanded a different method of payment, and Olesiak provided new bank account information. Again, however, CSX's attempts to withdraw payments toward the rail charges it had extended to the defendants—or, more specifically, to Five Star—on credit were denied for insufficient funds. CSX decided to terminate the credit relationship, and on July 11 a representative contacted Olesiak to freeze the defendants' credit account. In total, there were $193,107 in outstanding charges when the credit was frozen.[1]

Particularly relevant to the defendants' counterclaim, CSX possessed the final shipment placed by the defendants when it revoked the credit agreement. It informed Olesiak that it intended to hold five trailers it had transported to New Jersey as collateral

---

[1] The parties agree that CSX provided a total of $247,197 in services and that the defendants made $54,090 of successful payments toward that balance. *See* Defs.' Resp. to Pl.'s Rule 56.1 Stat., dkt. no. 110, ¶¶ 32-33. The also agree that the defendants subsequently made a $10,000 payment on July 20, discussed below. But the parties dispute whether CSX's $187,107 demand accounted for the $10,000 payment. The record is unambiguous, however; as discussed below, the $183,107 figure accounts for the $10,000 payment made a few days after the credit was revoked. *See id.* ¶ 34; App. to Pl.'s Mot. for Summ. J., Ex. 16, dkt. no. 98-16; *id.* Ex. 6 ¶ 5, dkt. no. 98-6.

for the outstanding fees.  Olesiak asked CSX to allow a group of "brokers"—third-party companies that had arranged to ship the goods through the defendants in the first place—to unload the trailers.  He emphasized that the contents of the trailers did not belong to him or his companies and that he faced significant legal liability if they were not returned to their owners.  CSX agreed to allow the trailers to be picked up and unloaded on the condition that Olesiak sign a "substitute collateral agreement," which "grant[ed] to [CSX] a security interest in, and a pledge as collateral for indebtedness, the trailer(s)."  App. to Pl.'s Mot. for Summ. J., Ex. 22, dkt. no. 98-22.  The agreement allowed the temporary release of the trailers for the purpose of unloading their cargo "despite [CSX]'s lien" against them.  *Id.*  Additionally, the parties appear to agree that the release of the trailers was contingent upon Olesiak making a payment toward the outstanding balance.

On July 20, Olesiak made a $10,000 payment against the debt.  CSX released the trailers, the contents of which were returned to their owners.  The defendants then returned the trailers to CSX, which has held them since.

CSX filed this suit to recover the outstanding fees (count 1) and for fraudulent inducement (count 2) and fraud (count 3).  The defendants moved to dismiss the fraud counts for failure to state a claim, and the Court denied the motion.  They then filed a six-count counterclaim[2] including claims for replevin (count 1), conversion (count 6), and tortious interference with prospective business relations stemming from CSX's refusal to return five trailers it has held as collateral until they pay the outstanding charges (count

---

[2] MT Logistics intervened as a plaintiff on the counterclaim.  The Court will refer to the defendants and counterclaimants collectively as the defendants.

5).  The defendants also asserts three separate breach-of-contract claims (counts 2-4).

All told, the defendants contend they are entitled to more than $8.1 million in

compensatory damages and $25 million in punitive damages.

CSX and the defendants have filed motions for summary judgment that address

separate claims.  The defendants again take aim at the fraud counts in CSX's amended

complaint.  CSX seeks summary judgment on all six counts of the defendants'

counterclaim and on its own claim for outstanding fees.  For the reasons stated herein,

the Court denies defendants' motion for summary judgment in its entirety and grants

CSX's motion for summary judgment in its entirety.

## Discussion

Summary judgment is proper where there is no genuine dispute regarding any

material fact and the moving party is entitled to judgment as a matter of law.  Fed. R.

Civ. P. 56(a); *Nicholson v. City of Peoria*, 860 F.3d 520, 522 (7th Cir. 2017).  In

assessing the motions for summary judgment, the Court views all facts in the light most

favorable to the nonmoving party and draws all reasonable inferences in that party's

favor.  *Carson v. Lake County*, 865 F.3d 526, 532 (7th Cir. 2017).

The defendants move for summary judgment on two of the three counts in CSX's

complaint.  Specifically, they argue that CSX has failed to proffer evidence from which a

reasonable jury could conclude that Olesiak fraudulently induced (count 2) or otherwise

defrauded (count 3) CSX in the process of securing credit.  Defendants do not seek

summary judgment on CSX's claim for $183,107 in unpaid rail fees (count 1).

CSX's motion seeks summary judgment on each of the six counts of defendants'

counterclaim.  It argues that the defendants have waived four of their claims by failing to

argue them in response to the summary judgment motion, and that, in any event, no reasonable jury could find for the defendants on any of the six.  CSX also seeks summary judgment on its affirmative claim for freight charges owed to the defendants, contending that there is no remaining material dispute regarding the charges or CSX's entitlement to them.

## A.    Defendants' motion for summary judgment

The defendants move for summary judgment on the fraudulent inducement and fraud counts of CSX's complaint.  The standards for prevailing on these causes of action are largely identical.  A plaintiff must show "(1) a false statement of material fact; (2) known or believed to be false by the person making it; (3) an intent to induce the other party to act; (4) action by the other party in reliance on the truth of the statement; and (5) damage to the other party resulting from such reliance."  *Hoseman v. Weinschneider*, 322 F.3d 468, 476 (7th Cir. 2003) (fraudulent inducement); *see also State Sec. Ins. Co. v. Frank B. Hall & Co.*, 258 Ill. App. 3d 588, 591-92, 630 N.E.2d 940, 943 (1994) (fraud).

### 1.    Fraudulent inducement

The defendants' motion largely relitigates their motion to dismiss, though they add a handful of new facts and inferences to the mix.  On fraudulent inducement, they argue that Olesiak could not possibly have intended to mislead CSX into extending credit to an unworthy company (MT Logistics) on March 4 because he did not actually finalize his purchase of that company until March 15.  Defendants seem to argue both that Olesiak could not have known MT Logistics' creditworthiness before the sale was finalized and that the fact that the company had *some* credit history suggested it would

7

have qualified for credit from CSX. But CSX argues that a reasonable jury could find Olesiak knew the relative uncreditworthiness of the company he was in the process of purchasing.

CSX also relies heavily on Olesiak's own testimony. Specifically, it places great emphasis on the following exchange from Olesiak's deposition:

> Q: So you're saying that MT didn't really have a credit history, so Five Star did, so you opened up credit in the name of Five Star?
> A: Yes.
> Q: Okay. Because I'm looking at the date on the bottom left corner [of the credit agreement], March the 4th, 2016, that would have coincided with your purchase of MT, right?
> A: Uh-huh.
> Q: So if MT did have a credit history, you would have probably opened this up in the name of MT, right, opened up the line of credit?
> A: With CSX?
> Q: Correct.
> A: I don't remember.
> Q: Okay.
> A: But for me at this time was the easier, you know, get the contract for Five Star and doing the rail for Five Star.
> Q: Because it had an existing—
> A: Yes.
> Q: Let me ask the whole question. It was easier to get the contract for Five Star because it had a longer credit history for CSX to be able to review and determine whether to grant credit?
> A: Yes.
> Q: Okay. But in fact MT is the entity that you intended to use to transport freight to the East Coast, right; that was the purpose of acquiring MT you testified?
> A: Yes.
> Q: So this was going to be a credit agreement with Five Star for shipments that were actually going to be in the name of MT?
> A: You're right.

App. to Pl.'s Mot. for Summ. J., Ex. 3, dkt. no. 98-3, at 62:18-63:22. Based on this testimony, CSX argues that a reasonable jury could conclude that Olesiak intentionally induced it to extend credit to MT Logistics by fraudulently using Five Star's name and reputation.

The defendants suggest that record evidence contradicts Olesiak's deposition testimony about MT Logistics' relative creditworthiness, that his deposition testimony was therefore "obviously erroneous" on this point, and that the testimony should accordingly be disregarded in favor of a later affidavit. Defs.' Br. in Supp. of Defs.' Mot. for Summ. J., dkt. no. 103, at 6. Specifically, defendants argue that evidence demonstrates MT Logistics in fact had established credit before Olesiak bought the company and that his affirmations to the contrary indicate that he misunderstood counsel's question during the deposition.[3] But even if this contradictory affidavit is due any weight, *see Beckel v. Wal-Mart Associates, Inc.*, 301 F.3d 621, 623 (7th Cir. 2002), the defendants' contention does not entitle them to summary judgment. Given the content of Olesiak's other statements—particularly his affirmation that it was "easier" to get credit in Five Star's name even though the credit was for MT Logistics—CSX has proffered evidence from which a reasonable jury could find that Olesiak fraudulently induced CSX to enter into the credit agreement. The defendants thus are not entitled to summary judgement on count 2 of CSX's amended complaint.

## 2. Fraud

The defendants' argument on CSX's fraud claim hits many of the same notes as their arguments about fraudulent inducement. And, as with the fraudulent inducement

---

[3] It is notable that Olesiak repeatedly testified to having a sufficient proficiency in English to testify during the deposition and that counsel repeatedly rephrased questions where necessary to clarify. *See, e.g.*, Pl.'s Rule 56.1 Stat., Ex. 3, dkt. no. 98-3, at 7:6-15; *id.* at 164:2-8. Here, any misunderstandings purportedly caused by a language barrier are less persuasive because they are raised by Olesiak's attorney apparently to undermine unfavorable deposition testimony and because counsel and Olesiak both previously affirmed no translator was needed. *See* Pl.'s Rule 56.1 Stat. of Add'l Facts, dkt. no. 106, ¶ 30.

claim, defendants' contentions are largely duplicative of the argument in their motion to dismiss. This time, however, they contend that two new facts support the motion. First, defendants argue that CSX was on notice that MT Logistics was the party for whom it was moving freight because the shipping containers CSX transported (and the trucks that delivered them to CSX) were marked with the MT Logistics logo. Second, they argue that the bank account information they provided CSX should also have put it on notice. Specifically, they note that the second account they provided for payment was held in MT Logistics' name.

Neither of the defendants' arguments is persuasive. They do not cite any evidence supporting the assertion that the shipping containers or the trucks that were moving them were labeled with the MT Logistics name. CSX, on the other hand, correctly notes that the *only* relevant record evidence shows that at least some of the trailers in question were conspicuously labeled with the Five Star name. *See* App. Pl.'s Br. in Opposition to Def.'s Mot. for Summ. J., Ex. 2, dkt. no. 107-2. Likewise, the suggestion that CSX should have known it was really dealing with MT Logistics based on bank account information provided by Olesiak is entirely unsupported. The electronic funds transfer authorization agreements that Olesiak signed—the only representations CSX ever received about the bank accounts that appear in the record— did not identify the formal owners of the accounts he tendered for direct withdrawal. Rather, they identified (1) the bank that administered the account, (2) routing and account numbers, and (3) the identity and contact information of the customer—which, it turns out, was identified as Five Star on *both forms*. Neither withdrawal form even hinted at the existence of MT Logistics. *See* App. to Pl.'s Mot. for Summ. J., Exs. 14-15,

dkt. nos. 98-14, 98-15. In short, the record simply does not support the defendants' argument.

The defendants alternatively suggest that that CSX cannot show an injury sufficient to support its fraud claim. Again, they rehash an argument they lost when the Court ruled on their motion to dismiss. Contrary to the defendants' suggestion, the delay between CSX's original complaint and its amended complaint does not undermine the facts in the record. The defendants provide no other evidence to support their contention.

Based on the evidence before the Court and drawing reasonable inferences in favor of the non-moving plaintiff, the Court concludes that a reasonable jury could conclude that Olesiak defrauded CSX and that that fraud caused CSX injury. The defendants thus are not entitled to summary judgment on count 3 of CSX's amended complaint.

### 3. Corporate form

The defendants make a passing attempt to resurrect an argument about Olesiak's personal responsibility grounded in Illinois corporations law. The Court squarely rejected this argument in its order on the defendants' motion to dismiss, and the they point to no evidence that would further bolster their contention. The officer of a corporation may be held individually liable for the conduct of the corporation if the officer "participated" in the conduct giving rise to corporate liability. *Prince v. Zazove*, 959 F.2d 1395, 1401 (7th Cir. 1992); *see also Itofca, Inc. v. Hellhake*, 8 F.3d 1202, 1205 (7th Cir. 1993). The record provides a sufficient basis for a reasonable jury to conclude that Olesiak personally participated in the misconduct CSX alleges. The defendants'

arguments about the corporate form thus do not support their motion for summary judgment.

**B.    CSX's motion for summary judgment on the counterclaim**

In response to CSX's suit, the defendants brought a six-count counterclaim primarily involving CSX's holding of the five trailers as collateral for the outstanding rail freight charges and injuries the defendants say they sustained as a result.  Additionally, they added MT Logistics, Inc.—Olesiak's company for which the defendants are accused of obtaining credit by fraudulent means—as a plaintiff-intervenor.  The Court concludes that CSX is entitled to summary judgment on each count of the counterclaim.

**1.    Replevin and conversion**

The defendants assert a claim for replevin and conversion on the basis that CSX wrongfully held five of the defendants' trailers "hostage" after revoking the credit agreement.  In general, a claim of replevin aims to return property to the claimant, whereas a claim of conversion seeks to compensate the claimant for her losses where the property in question is destroyed or otherwise impossible to return to her possession.   *Compare* 735 Ill. Comp. Stat. 5/19-101 *with id.* 5/19-120; *see also Priddle v. Malanis*, No. 12 C 5831, 2016 WL 8094590, at *10 (N.D. Ill. Sept. 14, 2016).  To prevail on a replevin claim, the claimant must demonstrate "that (1) she is the owner of the relevant property or lawfully entitled to its possession; (2) the property at issue is wrongfully detained by the defendant; [and] (3) the property is not subject to any tax, assessment, or fine." *Priddle*, 2016 WL 8094590, at *10.  Conversion similarly requires the claimant to "show (1) the unauthorized and wrongful assumption of control, dominion, or ownership by defendant over the personal property of another; (2) the

[claimant]'s right in the property; (3) the [claimant]'s absolute and unconditional right to immediate possession of the property; and (4) a demand for possession of the property." *Id.* at *6 (citing *Sandy Creek Condo. Ass'n v. Stolt & Egner, Inc.*, 267 Ill. App. 3d 291, 294, 642 N.E.2d 171, 174 (1994)).

The analysis of these claims overlaps in this case because each requires the claimants to demonstrate their right to possess the disputed property. At the outset, CSX argues that defendants forfeited these claims when they entirely failed to address the issues in their response to the motion for summary judgment. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010); *United States v. Farris*, 532 F.3d 615, 619 (7th Cir. 2008). Notwithstanding forfeiture, CSX argues that the defendants cannot meet their burden on either claim because the five disputed trailers are subject both to a "carrier lien" and to the written collateral substitute agreement, which "grant[ed] to [CSX] a security interest in, and a pledge as collateral for indebtedness, the trailer(s)."[4] App. to Pl.'s Mot. for Summ. J., Ex. 22, dkt. no. 98-22.

The defendants may well have forfeited their claims for conversion and replevin. But even if they did not, they have failed to point to evidence upon which a reasonable jury could find that they had a right to possess the disputed trailers in light of the collateral substitute agreement. The Court therefore grants CSX's motion for summary

---

[4] Although the defendants seem to make several vague allusions throughout their papers to some form of a duress defense to the enforceability of the collateral substitute agreement—i.e., that Olesiak was not in a position to bargain effectively when he signed the agreement and that it thus should not be enforced—they fail to make such a defense explicit and none of their allegations, even taken as true, approach economic duress under Illinois law. *See Resolution Tr. Corp. v. Ruggiero*, 977 F.2d 309, 313-14 (7th Cir. 1992) (noting that a difficult a bargaining position or the pressure of financial circumstances are not enough to establish duress and that "the pressure applied must have been wrongful or unlawful; mere hard bargaining is not enough").

judgment on counts 1 and 6 of the counterclaim.

### 2. Tortious interference

The defendants next claim that CSX tortiously interfered with their business relationships when it held the five trailers as collateral for the outstanding debt. To prevail, they must demonstrate: "(1) a reasonable expectancy of entering into a valid business relationship, (2) [CSX]'s knowledge of the expectancy, (3) an intentional and unjustified interference by [CSX] that induced or caused a breach or termination of the expectancy, and (4) damage to the [defendants] resulting from [that] interference." *McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 685 (7th Cir. 2014).

CSX focuses its motion for summary judgment on what it argues are evidentiary gaps related to the second, third, and fourth elements. On the second element— knowledge of the expectancy—CSX argues that there is no evidence that CSX knew that MT Logistics had prospective business relationships that were likely to be impaired by its initial refusal to return the disputed trailers to the defendants. On causation and damages, CSX argues that the only relevant record evidence refutes the defendants' theory for these elements. Specifically, CSX points to testimony from the three brokers whose goods were in the disputed trailers and who the defendants say subsequently ended their business relationships with MT Logistics because of CSX's actions. The brokers uniformly identified MT Logistics' lapses—for instance, unauthorized "double-brokering" whereby it moved freight via a third-party rail carrier like CSX when it had agreed to move the freight using its own truck fleet—as *the* cause of their decisions to terminate their contracts with MT Logistics. *See* Pl.'s Rule 56.1 Stat., dkt. no. 97, ¶¶ 59-70. Indeed, each of the three brokers expressly stated that CSX's conduct *did not*

factor into its decision to end its contract.  *See id.*

The defendants do not cite any record evidence to rebut CSX's contentions. Instead, on the knowledge element, they offer conclusory assertions that CSX knew about and intentionally interfered in their business relationships causing untold millions of dollars in damages.  As proof, the defendants cite apparently irrelevant portions of Olesiak's post-deposition affidavit.  And the defendants entirely fail to address CSX's arguments regarding the causation and damages elements.  Importantly, they do not and apparently cannot point to evidence rebutting the brokers' testimony.

The defendants have proffered wholly insufficient evidence to satisfy the second, third, and fourth elements of their counterclaim.  Even drawing all reasonable inferences in the defendants' favor, no reasonable jury could find on this record that CSX tortiously interfered with the defendants' business relationships.  The Court therefore grants CSX's motion for summary judgment with regard to count 5 of the counterclaim.

### 3.    Breach of contract

Finally, the defendants assert three claims for breach of contract.  Each of these claims arises from a different contract that CSX allegedly formed with the defendants and then breached.  First, the defendants allege CSX violated the original credit agreement by providing them too much credit.  Second, they allege that an oral contract was formed between a CSX and Olesiak for the repayment of the outstanding fees and release of the disputed trailers and that CSX breached that agreement by failing to return the trailers after the first payment was made pursuant to the agreement.  Third, they allege that CSX has breached the collateral substitute contract by holding the five disputed trailers as collateral for the outstanding balance.

To prevail on each claim, the defendants must show "the existence of a valid and enforceable contract, performance by the [claimants], breach of the contract by [CSX], and resultant damages or injury to the [claimants]." *Mission Measurement Corp v. Blackbaud*, 287 F. Supp. 3d 691, 715 (N.D. Ill. 2018) (quoting *Sheth v. SAB Tool Supply Co.*, 2013 IL App. (1st) 110156, ¶ 68, 990 N.E. 738, 754).

### a.    Credit agreement

The defendants' first breach argument, for which they cite no supporting law, seems to suggest that CSX breached the credit agreement by following its terms and trusting the defendants to repay the credit they were extended. Specifically, the defendants argue that the credit agreement's denomination of $50,000 "expected per week" credit should be read as an absolute overall borrowing limit instead of an estimate of how much credit would be needed and extended each week. They argue that CSX breached that contract by allowing the defendants to draw more than $50,000 of credit.

But the defendants' proposed reading ignores the plain language of the contract and is thus contrary to Illinois law's emphasis on the language used by the parties when they form a contract. *See Gallagher v. Lenart*, 226 Ill. 2d 208, 223, 874 N.E.2d 43, 58 (2003) ("A court must initially look to the language of a contract alone, as the language, given its plain and ordinary meaning, is the best indication of the parties' intent"). The contract's provision of credit on a "per week" basis, by its plain terms, refers to a periodic expectation and not an overall limit. The Court cannot delete these words from the contract, as the defendants request, in order to manufacture a retroactive breach by CSX. The Court concludes that the breach-of-contract claim against CSX arising from

the credit agreement is legally deficient and therefore grants CSX's motion for summary judgment on count 2 of the counterclaim.

### b. Oral contract

Next, the defendants suggest that CSX breached an oral contract they say was formed between Olesiak and a representative of CSX, Karen Hicks, after CSX froze the defendants' credit. Specifically, the defendants allege that Hicks agreed that the disputed trailers and their contents would be returned to the defendants upon the tender of the first of a series of weekly $10,000 payments toward the defendants' debt. They further contend that, after Olesiak made the first payment and CSX released the trailers to be unloaded, CSX wrongfully retook possession of the trailers.

CSX counters that this claim was forfeited by the defendants when they failed to respond to CSX's argument in their response brief on this motion. *See Bonte*, 624 F.3d at 466. That aside, CSX also argues that any oral contract between Hicks and Olesiak was either (1) unenforceable as an oral modification in violation of the express terms of the written contract or (2) subsumed by the later written collateral substitute agreement.

Again, the defendants may have forfeited this claim by failing to address it in their response to the motion for summary judgment. But even if they did not, any oral understanding between Hicks and Olesiak was superseded by the formal written contract the parties entered into soon after.[5] That contract expressly "grant[ed] to [CSX] a security interest in, and a pledge as collateral for indebtedness, the trailer(s)" and

---

[5] Again, the defendants' vague allusions to a duress defense to the enforceability of the later contract are not enough to actually raise such a defense. Nor, if they had actually raised the defense, do the circumstances complained of by the defendants appear rise to the level of economic duress under Illinois law. *See Resolution Tr. Corp.*, 977 F.2d at 313-14.

allowed for their release "despite [CSX]'s lien" for the limited purpose of unloading the trailers' contents, which were property of the brokers rather than the defendants. App. to Pl.'s Mot. for Summ. J., Ex. 22, dkt. no. 98-22. The breach claim based on the oral contract allegedly formed between Hicks and Olesiak is therefore legally deficient. CSX is entitled to summary judgment on count 3 of the counterclaim.

### c. Collateral substitute agreement

In their last breach of contract claim, the defendants allege that CSX breached the collateral substitute agreement. How CSX allegedly breached this agreement is less clear; the second amended counterclaim seems to suggest that CSX did so by demanding immediate payment in violation of the credit agreement and the oral contract—i.e., by violating the contracts that are the subject of defendants' two other breach claims. And, once again, the defendants failed to address this counterclaim in their response to the motion for summary judgment, so their brief provides no clarification of the counterclaim.

CSX again argues that the defendants forfeited this claim by failing to address it in their summary judgment response. *See Bonte*, 624 F.3d at 466. CSX also argues that the contract's terms expressly granted it a security interest in the trailers and that its decision to hold the disputed trailers as collateral is consistent with the contract's terms. And it points to the defendants' apparent compliance with its interpretation of the agreement as further evidence of both parties' understanding—after all, CSX released the trailers pursuant to the agreement so that the defendants could unload them and return their contents to the brokers, after which the defendants themselves returned the trailers to CSX, apparently to hold as collateral for the outstanding balance.

The Court concludes that the breach of contract claim was either forfeited or, if not, is insufficiently supported to survive CSX's motion for summary judgment. There is no basis upon which a reasonable jury could find CSX responsible for breaching the substitute collateral agreement. CSX is entitled to summary judgment on claim 4 of the counterclaim.

## C. CSX's motion for summary judgment on is claim for rail freight charges

Finally, CSX seeks summary judgment on its affirmative claim for outstanding rail freight charges. When a plaintiff that bears the burden of proof on its own claim moves for summary judgment, as does CSX here, it may prevail only if it can "lay out the elements of the claim, cite the facts which it believes satisfies these elements, and demonstrate why the record is so one-sided as to rule out the prospect of a finding in favor of the non-movant on the claim." *Hotel 71 Mezz Lender LLC v. Nat'l Retirement Fund*, 778 F.3d 593, 601 (7th Cir. 2015). CSX argues that the defendants have admitted their liability, no genuine questions of material fact remain, and it is therefore entitled to judgment as a matter of law.

The record reveals that the defendants have, in fact, admitted their liability for the outstanding fees. But the defendants nevertheless oppose summary judgment on the question of the amount due. First, they argue that their counterclaim could change the amounts owed by each party. The Court can quickly dispose of this argument, as it has granted summary judgment to CSX on the entirety of the defendants' counterclaim.

The only remaining dispute also involves the amount the defendants owe. Specifically, CSX contends the outstanding balance is $183,107, and the defendants argue they owe only $173,107. The difference between these figures rests on whether

the $10,000 payment wired to CSX by Olesiak to secure the release of the disputed trailers to unload their contents was already included in the amount demanded by CSX. Based on the defendants' express admissions and the undisputed record, the Court concludes that it was. Specifically, the defendants admitted that they had accrued a total of $247,197 in freight charges, that they made $54,090 in payments before the credit agreement was terminated by CSX on July 11, and that they made an additional $10,000 payment to CSX on July 20. *See* Defs.' Resp. to Pl.'s Rule 56.1 Stat., dkt. no. 10. ¶¶ 32-33. The net amount of outstanding fees after applying these payments is $183,107. The defendants do not, and apparently cannot, cite evidence supporting their contention that the $10,000 was not accounted for in this arithmetic. *See id.* ¶ 34.

Because no genuine issues of material fact remain on this claim, the Court grants summary judgment in CSX's favor on count 1 of the amended complaint. CSX is entitled to $183,107 plus reasonable finance charges, interest, and attorneys' fees. The latter amounts remain to be determined.

### Conclusion

For the foregoing reasons, the Court denies the defendants' motion for partial summary judgment [dkt. no. 100] and grants the plaintiff's motion for partial summary judgment [dkt. no. 95]. CSX is entitled to summary judgment on count 1 of its amended complaint and on the entirety of defendants' second amended counterclaim. The case is set for a status hearing on January 7, 2019 at 9:30 a.m.

_____

MATTHEW F. KENNELLY
United States District Judge

Date:  December 24, 2018